IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Wesley O. Terrill, ) | |
| ) | C/A No. 7:17-00943-TMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Limestone College and ) | |
| President Walt Griffin, ) | |
| ) | |
| Defendants. ) | |

This is matter is before the court on a partial motion to dismiss filed by Defendants Limestone College and Limestone's President, Walt Griffin. (ECF No. 5). Defendants seek to have Plaintiff's racial discrimination and retaliation claims dismissed on the basis of res judicata. *Id.* Plaintiff filed a response opposing the motion (ECF No. 14), and Defendants filed a reply to that response (ECF No. 16). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this motion was referred to a magistrate judge for review. The magistrate judge reviewed the record and issued a Report and Recommendation (the "Report") recommending that the Defendants' partial motion to dismiss be granted and that only the Plaintiff's claim for violation of the Family Medical Leave Act (FMLA) should remain pending before this court. (ECF No. 19). Plaintiff filed objections to the Report (ECF No. 20), and the Defendants filed a Response to those objections (ECF No. 22).

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *See Matthews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter

1

with instructions. 28 U.S.C. § 636(b)(1). However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## I. Background/Procedural History

In August 2011, Plaintiff, an African American male, began working as an Assistant Director for the Extended Campus Classroom ("ECC") and as an Academic Advisor and Site Representative for Limestone College. (ECF No. 1 at 2). Additionally, since 2003, Plaintiff has served as a Course Instructor in Defendants' program called "Call Me Mister." *Id.* On March 30, 2017, Plaintiff was given notice that his employment with Defendants was terminated, effective April 3, 2017. (ECF No. 1 at 4).

On December 21, 2016, Plaintiff filed his first lawsuit in state court (hereinafter "*Terrill I*") against these same Defendants, alleging breach of his employment contract, breach of employment contract with fraudulent intent, and retaliation, all of which allegedly arose out of Plaintiff's employment with Limestone College. (ECF No. 5-1). Plaintiff alleged the following in his breach of contract claim: (1) that Defendants breached their contract with Plaintiff by allowing Area Coordinators to receive higher compensation than Plaintiff despite their lower ranking in the company; (2) that Defendants breached their contract with Plaintiff by reducing Plaintiff's job duties; and (3) that Defendants breached their contract with Plaintiff by advocating for and allowing other employees to maintain their positions and salaries while Plaintiff's job duties and salary decreased. (ECF No. 5-1 at 6–7). Additionally, Plaintiff alleged the same facts

in his claim for breach of contract with fraudulent intent, but he further alleged that to his detriment he had relied on Defendants' promises regarding compensation and on the employment contract's provisions. (ECF No. 5-1 at 8).

Finally, Plaintiff alleged the following in regards to his retaliation claim in *Terrill I*: (1) that Plaintiff's supervisors participated in a common design through concerted efforts to retaliate against Plaintiff for Plaintiff's unintentional failure to disclose when the ECC vehicle trade had gone through; (2) that these supervisors eliminated and reduced Plaintiff's job duties, which negatively affected his earnings; (3) that one of the supervisors retaliated against Plaintiff when she failed to consider him for exempt status under the Fair Labor Standards Act while advocating for exempt status and raises on behalf of others in the company; (4) that one supervisor retaliated against Plaintiff when Plaintiff's company vehicle was taken away and given to someone else; and (5) that these two supervisors knowingly and willfully isolated and harassed Plaintiff in order to diminish his job opportunities, which made Plaintiff unable to generate supplemental income. (ECF No. 5-1 at 9).

On March 15, 2017, Plaintiff stipulated to the dismissal of *Terrill I* with prejudice pursuant to South Carolina Rule of Civil Procedure 41. (ECF No. 14 at 2). Following his termination from Limestone College, Plaintiff filed this lawsuit (hereinafter "*Terrill II*") against Defendants on April 12, 2017, alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981, and wrongful termination in violation of the Family and Medical Leave Act ("FMLA"). (EFC No. 1). On May 8, 2017, Defendants filed a motion to dismiss the racial discrimination and retaliation claims. (ECF No. 5). The Plaintiff responded on June 27, 2017 (ECF No. 14), and Defendants replied on July 5, 2017 (ECF No. 16). The motion was referred to a magistrate judge, and he issued a Report recommending the motion to dismiss in part be

3

granted. (ECF No. 19). Plaintiff made two timely objections. (ECF No. 20). Defendants timely replied to these objections. (ECF No. 22). This court overrules these objections for the reasons below.

## II. Applicable Law and Analysis

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).

Additionally, because Plaintiff's state court action for breach of contract was adjudicated under South Carolina law, the law of South Carolina controls the determination of whether res judicata bars the Plaintiff's present claim. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466–67(1982) (stating that the law "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgment emerged"); *Marrese v. Am. Acad. of Orthopaedic Surgeon*, 470 U.S. 373, 380

4

(1985) (stating that the law "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."). Under South Carolina law, in order to establish that res judicata applies, a defendant must show (1) that the prior judgment was final, valid, and on the merits; (2) that the parties are identical in both cases; and (3) that the second case involves "matter properly included in the first action." *Wilson v. Charleston Cty. Sch. Dist.*, 419 S.C. 442, 450, 798 S.E.2d 449, 453 (Ct. App. 2017) (internal citations omitted).  Furthermore, if a defendant establishes all three elements, not only is the plaintiff barred from raising issues that were adjudicated in the prior suit, but the plaintiff is also barred from raising "any issues which might have been raised in the former suit." *Id.* at 450, 798 S.E.2d at 453. In determining whether a claim might have or should have been brought in a prior suit, South Carolina courts look at four factors: (1) if subject matter is the same in both cases, (2) if the first and second cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant, (3) if there is the same evidence in both cases, or (4) if the claims arise out of the same transaction or occurrence that is the subject matter of the prior action. *Judy v. Judy*, 393 S.C. 160, 176, 712 S.E.2d 408, 416 n.7 (2011) (quoting James F. Flanagan, South Carolina Civil Procedure 649–50 (2d ed. 1996)).  However, South Carolina courts have continuously held that "[r]es judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Id.* at 172, 712 S.E.2d at 414 (citing *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34 (1999)).

Plaintiff concedes that the same parties are involved in both *Terrill I* and *Terrill II*. (ECF No. 20 at 4). However, Plaintiff objects to the magistrate judge's determinations that *Terrill I* was a final adjudication on the merits and that *Terrill I* and *Terrill II* arise out of the same transaction or occurrence. (ECF No. 20 at 20). Essentially, Plaintiff contends that res judicata

5

does not apply because elements (1) and (3) are not met. However, this court has determined that all elements of res judicata are met and that res judicata bars the non FMLA claims in *Terrill II*.

### A. Non-FMLA claims in *Terrill II* should have been brought in *Terrill I*

Plaintiff objects to the magistrate judge's determination that *Terrill I* and *Terrill II* arose from the same transaction or occurrence, and that, therefore, the claims in *Terrill II* should have been brought in *Terrill I*. (ECF No. 20 at 4). Plaintiff alleges that the causes of action in the two cases depend on "entirely different factual allegations and occurrences" and that *Terrill II* is based on facts that had not yet occurred at the time of the *Terrill I* dismissal. (ECF No. 20 at 7). Plaintiff lists five "new" facts that he contends occurred after the conclusion of *Terrill I*: (a) that "Defendants' agent, Hudson [a white female] failed to communicate with Plaintiff concerning pertinent information for Plaintiff to complete his job duties," (b) that "Plaintiff was excluded from necessary calls that were essential to his job," (c) that "Plaintiff['s] income was reduced and his supplemental income was taken away from him while Caucasian workers did not have their income reduced or lose their supplemental income," (d) that "Plaintiff was mandated to tak[e] his lunch break at a designated time while his Caucasian co-workers were not required to do the same," and (e) that Plaintiff was terminated on April 3, 2017. (ECF No. 20 at 6). However, with the exception of the termination, all of these facts were either directly stated in the *Terrill I* Complaint (ECF No. 5-1) or they are directly related to a fact that was asserted in the *Terrill I* Complaint.

For example, in paragraph sixteen of the Terrill I Complaint, Plaintiff alleged that "Ms. Hudson's anger . . . was immediately apparent as communication with Plaintiff significantly deteriorated" and that she "excluded [Plaintiff] from conversations pertaining to ECC business." (ECF No. 5-1, ¶ 16). This correlates with "new" facts (a) and (b) above. Additionally, in

6

paragraph twenty-three of the *Terrill I* Complaint, Plaintiff alleged that "Plaintiff was then informed that he would no longer receive his base salary and supplemental income from CMM." *Id.* at ¶ 23. Similarly, the *Terrill I* Complaint goes on to allege that "Ms. Hudson played a role in arbitrarily elevating the salaries of Plaintiff's colleagues" and that these colleagues "receive[d] higher compensation than Plaintiff when Plaintiff was clearly in a position of higher ranking." *Id.* at ¶ 29. Both of these factual allegations correspond to new factual allegation (c) above. While the racial descriptions of the coworkers are missing in the *Terrill I* Complaint, these descriptions would have been known at the time of the filing of the initial *Terrill I* Complaint. Furthermore, while the *Terrill I* Complaint did not specifically address Plaintiff having to take his lunch break at a designated time each day while his coworkers did not have to do so, it did state that Plaintiff was no longer under exempt status, that his coworkers were given exempt status, and that as a result of his non-exempt status he was forced to punch a time clock and stick to a "timekeeping process." (ECF No. 5-1 at ¶ 18, 22). Therefore, the only "new fact" that Plaintiff has listed that was actually new in the *Terrill II* case is Plaintiff's termination. However, in asserting wrongful termination in *Terrill II*, Plaintiff specifically focuses on his FMLA claim, not on the racial discrimination and retaliation claims at issue in this motion to dismiss. (ECF No. 1 at 7).

Still, Plaintiff alleges now that his current claims for racial discrimination and retaliation were not ripe or ready for review at the time of *Terrill I* because of these "new" facts that Plaintiff alleges occurred after *Terrill I* was dismissed. (ECF No. 20 at 7). However, in comparing the two Complaints, it seems that Plaintiff's potential claims for racial discrimination and retaliation were ripe prior to the dismissal of *Terrill I* because he asserts nearly identical facts and injuries in this action. While the Complaint in *Terrill I* did not list the races of Ms. Hudson, the coworkers, or Plaintiff in the facts, the racial description of each key player in the

7

facts of *Terrill I* would have been known at the time of the filing of that Complaint. Therefore, this court cannot agree with Plaintiff that his racial discrimination claim was not ripe at the time of *Terrill I*.

In fact, of the twenty-seven factual allegations in *Terrill II*, nineteen of them are either identical or almost identical to the factual allegations set forth in *Terrill I*. (Compare ECF No. 1 and 5-1). The remaining factual allegations revolved around Plaintiff's FMLA claims regarding his allegedly wrongful termination. (ECF No. 5-1). Furthermore, the facts of both *Terrill I* and *Terrill II* indicate that the same right – the terms and conditions of Plaintiff's employment – has been allegedly violated by essentially the same wrong – the changing of the terms and conditions of Plaintiff's employment. The only difference seems to be the alleged motivation for this wrong.

In applying South Carolina law to this very same issue, the Fourth Circuit concluded that a subsequent claim for racial discrimination "clearly could have been raised" in the earlier State court action for breach of contract in *Allen v. Greenville County*, 712 F.3d 934, 935 (4th Cir. 1983). There, the court concluded that the district court's dismissal based on claim preclusion was "plainly right" when the Plaintiff initially sued Greenville County for breach of contract, which ended in a directed verdict for the defendant, then turned around and sued the county for racial discrimination based on the same facts. *Id.*

Similarly, in 2007 another District of South Carolina court applied South Carolina preclusion principles and concluded that the plaintiff's federal case for violation of the Age Discrimination and Employment Act (AEDA) was barred by plaintiff's prior case for breach of contract because the cases involved the same subject matter. *Weston v. Margaret*, No. 1:05-2518-RBH, 2007 WL 2750216 *6 (D.S.C. Sept. 20, 2007). The court reasoned that since "both cases involve[d] the termination of the plaintiff from his employment with the defendants and the

8

same underlying facts [were] alleged in both Complaints," the same subject matter was at issue in both cases. *Id.* Additionally, the magistrate judge's report, which the district court incorporated, noted that "the breach of contract and alleged age discrimination occurred at the same time period, involved the same actors, and allegedly caused the same resulting termination" of the plaintiff's employment. *Id.* at *6. Therefore, the court determined that "plaintiff could have raised the AEDA claims in her state court lawsuit" and that, thus, res judicata applied. *Id.* at *3.

In this case, Plaintiff's breach of contract claims in *Terrill I* share the same underlying facts with Plaintiff's non-FMLA claims in *Terrill II*. The alleged race discrimination and retaliation occurred at the same time as the alleged breach of contract, as shown by the correlating facts to both claims. The claims involved the same actors. Finally, the breach of contract and non-FMLA claims allegedly resulted in the same treatment of Plaintiff – changing Plaintiff's job duties, reducing Plaintiff's pay, and excluding Plaintiff from opportunities his other coworkers were receiving. Therefore, this court finds that the facts in *Terrill I* and *Terrill II* were based on the same subject matter, and, therefore arose from the same transaction or occurrence. Accordingly, Plaintiff could have alleged the racial discrimination and retaliation claims from *Terrill II* in *Terrill I* had he chosen to. As such, Plaintiff's racial discrimination and retaliation claims are now barred by res judicata.

### B. Finality of adjudication in *Terrill I*

Finally, Plaintiff's claim that the determination in *Terrill I* was not a final adjudication is misplaced. As the magistrate judge noted in the Report, Plaintiff seems to conflate the doctrines of issue preclusion and claim preclusion. While "res judicata" as a term can encompass both types of preclusion doctrines, modern courts are often referring only to claim preclusion when

9

they refer to res judicata. *See Catawba Indian Nation v. State*, 407 S.C. 526, 537, 756 S.E.2d 900, 906 (2014). Additionally, it is clear in the Defendants' motion to dismiss that claim preclusion is at issue in this case, not issue preclusion. In fact, the doctrine of issue preclusion is inapplicable when an argument turns on whether or not a party should have or could have litigated a particular claim in a prior adjudication. *Id.* at 538, 756 S.E.2d at 907.

Plaintiff asserts that he does not believe that the issues of racial discrimination and retaliation were litigated in *Terrill I*, and that, therefore, *Terrill I* is not a final adjudication of those issues. (ECF No. 20 at 7). In arguing that res judicata does not apply, Plaintiff relies on *Surety Realty Corporation v. Ashmer,* 249 S.C. 114, 119, 153 S.E.2d 125, 128 (1967), in stating that "res judicata applies to those matters actually adjudicated in the former action." (ECF No. 20 at 7). However, this is a misquotation of the case law. The case reads that "res judicata applies to those *issues* actually adjudicated in the former action." *Surety Realty Corp.*, 249 S.C. at 119, 153 S.E.2d at 128 (emphasis added). Furthermore, a careful reading of this case demonstrates that the opinion clearly focuses on issue preclusion, which is inapplicable to Plaintiff's case.

Contrary to issue preclusion, which does require issues to actually be litigated in a prior suit if they are to be barred in a subsequent suit, claim preclusion does not require actual prior litigation of the claims in order for the bar to apply. *See Catawba*, 407 S.C. at 537, 756 S.E.2d at 906. Plaintiff stipulated to dismissal of *Terrill I* with prejudice (ECF No. 14 at 2), and this "acts as an adjudication on the merits and therefore precludes subsequent litigation just as if the action had been tried as a final adjudication." *Laughon v. O'Braitis*, 360 S.C. 520, 527, 602 S.E.2d 108, 111 (S.C. Ct. App. 2004). Accordingly, since claim preclusion bars Plaintiff from pursuing claims that were litigated or *could have been* litigated in the prior suit, the finality of the decision

in *Terrill I* applies to both claims that were brought before the court and claims that should have been brought before the court at that time. *See Cawtaba*, 407 S.C. at 538, 756 S.E.2d at 907.

Accordingly, Plaintiff's non-FMLA claims should have been brought in *Terrill I* if Plaintiff wished to raise the claims, and, therefore, the adjudication of *Terrill I* is final as to those claims. Consequently, res judicata bars the racial discrimination and retaliation claims from this suit.

### III. Conclusion

After a thorough review of the Report and the entire record in this case, the court adopts the magistrate judge's Report (ECF No. 19). Accordingly, Defendants' partial motion to dismiss (ECF No. 5) is GRANTED, and only Plaintiff's FMLA cause of action shall remain pending before this court.

IT IS SO ORDERED.

s/ Timothy M. Cain
United States District Judge

October 31, 2017
Anderson, South Carolina